1

2

3

4

5

6

7

8

9

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

UNITED STATES OF AMERICA,

                      Plaintiff,

        v.

JOSEPH FELIX,

                      Defendant.

Case No. 2:13-cr-00042-APG-PAL

**ORDER DENYING MOTION FOR NEW TRIAL**

(ECF No. 156)

10

11

12

13

14

15

16

17

18

19

        Defendant Joseph Felix moves for a new trial on the basis of newly discovered evidence regarding a witness in the criminal case against him.  Felix contends the Government failed to disclose a meeting between witness Shannon Healy and an Assistant United States Attorney that occurred just before Healy was scheduled to testify at trial.  Felix asserts that during this meeting, Healy was intimidated into subsequently invoking her Fifth Amendment rights and refusing to testify at trial.  Felix raises three grounds for a new trial: Federal Rule of Criminal Procedure 33, failure to disclose *Brady*/*Giglio* material, and fraud on the court.  In his reply, he also asserts prosecutorial misconduct.  At the hearing in this matter, he also raised a Confrontation Clause argument which was not included in the motion or reply.  I deny the motion without an evidentiary hearing.

20

**I.  MOTION FOR NEW TRIAL UNDER RULE 33**

21

22

23

24

25

26

27

        To prevail on a Rule 33 motion for a new trial based on newly discovered evidence, a defendant must satisfy a five-part test: "(1) the evidence must be newly discovered; (2) the failure to discover the evidence sooner must not be the result of a lack of diligence on the defendant's part; (3) the evidence must be material to the issues at trial; (4) the evidence must be neither cumulative nor merely impeaching; and (5) the evidence must indicate that a new trial would probably result in acquittal." *United States v. Harrington*, 410 F.3d 598, 601 (9th Cir. 2005) (quotation omitted).

28

### A.  Healy's Testimony

No evidentiary hearing is warranted on this ground because a new trial would not probably result in acquittal.  When the 911 call was admitted, it was not conditioned upon later tie-up to Healy's testimony. ECF No. 121 at 202-11.  Thus, the 911 call would have been admitted regardless of whether Healy testified.  That call was powerful evidence against Felix. The caller was frantic and panicked in the heat of a life and death situation.  It was the epitome of an excited utterance and a prime example of why that hearsay exception exists:

> Since this utterance is made under the immediate and uncontrolled domination of the senses, and during the brief period when considerations of self-interest could not have been brought fully to bear by reasoned reflection, the utterance may be taken as particularly trustworthy (or, at least, as lacking the usual grounds of untrustworthiness), and thus as expressing the real tenor of the speaker's belief as to the facts just observed by him; and may therefore be received as testimony to those facts.

*United States v. Napier*, 518 F.2d 316, 318 (9th Cir. 1975) (quoting 6 Wigmore, Evidence § 1747, at 135 (3d ed. 1940)); *see also* Fed. R. Evid. 803, 1972 advisory comm. n. to paragraphs (1) and (2) ("The theory of Exception [paragraph] (2) is simply that circumstances may produce a condition of excitement which temporarily stills the capacity of reflection and produces utterances free of conscious fabrication.").

Additionally, although Felix argues there was no evidence Healy was the 911 caller, witness Salina Onofrietti (Felix's girlfriend at the time of the shooting) testified that she was "pretty sure [Healy] was calling the ambulance at that time" and Onofrietti saw Healy on the phone. ECF No. 121 at 175.  The jury also heard that Healy was flirting with Felix that night, thus explaining the statement on the 911 call that the caller's "boyfriend" was shot. *Id.* at 191-93 (stating Healy was acting like a "ho" and was trying to "date" Felix).  Thus, regardless of whether the jury heard Healy's voice, there was sufficient evidence in the record for the jury to conclude Healy was the 911 caller.

Even if Healy testified with a full grant of immunity and testified that she or Tank shot Felix, she would have been thoroughly impeached with her prior statements, some of which were

1   consistent with the frantic 911 call during which she stated that Felix shot himself.  The

2   Government also would have elicited that Healy was Felix's girlfriend at the time of trial and thus

3   she had incentive to lie for him.  Although it is theoretically possible that a reasonable jury could

4   believe Healy or Tank shot Felix despite the 911 call, the test is not what a reasonable jury could

5   believe but whether the new evidence would probably result in acquittal.  It would not.  I

6   therefore deny Felix's motion under Rule 33 for a new trial based on newly discovered evidence.

7       **B.  The Gun**

8       Although not raised in his motion, Felix argued at the hearing that without Healy's

9   testimony the gun would not have been admitted because the only link between the shooting and

10   the gun (which was recovered the next day at a different location) was Healy's statements to the

11   investigating police officers.  Felix contends that allowing Healy's statements about the gun's

12   location to be elicited through the officers' testimony violates the Confrontation Clause because

13   Healy refused to testify and thus was not subject to cross examination.

14       This argument is not based on newly discovered evidence and was not raised during trial

15   or within the time for filing a motion for a new trial based on grounds other than newly

16   discovered evidence. *See* Fed. R. Crim. P. 33(b).  At trial, the officers testified about what Healy

17   told them regarding where they could find the gun and Healy refused to testify.  Thus, all the facts

18   necessary for this argument occurred during trial.  Additionally, this issue is factually unrelated to

19   the newly discovered evidence cited in support of Felix's motion.

20       Police officer Gabriel Lebario testified that Sergeant Andrew Pennucci directed him and

21   his partner "to drive Shannon Healy around and she was going to point out some locations to—

22   she was going to point out some locations to a possible gun." ECF No. 119 at 182.  When the

23   Government asked Lebario whether he knew what gun Healy was referring to, he stated, without

24   objection from the defense, that "it was reference a—an investigation, a shooting that had

25   occurred earlier in the morning" of December 7, 2012. *Id.* at 184; *see also id.* at 223 (responding

26   affirmatively to the question of whether Healy told him there could be a gun at two locations,

27   without objection from the defense).  After Healy refused to testify, Sergeant Pennucci testified,

28

3

without objection from the defense, that the police were searching the address where the gun was found to locate the firearm related to Felix's shooting. ECF Nos. 120 at 248-49 (Healy refuses to testify further); 122 at 160 (Pennucci's testimony).  The gun was admitted without objection from the defense after Healy had refused to testify. ECF No. 120 at 248-49 (Healy refuses to testify further), 261 (gun admitted without objection).

Felix objected to a Confrontation Clause issue with respect to the 911 call. ECF No. 121 at 203.  Felix also objected on hearsay and Confrontation Clause grounds to Sergeant Chris Kennedy's testimony about what Healy told him regarding the shooter's identity. ECF No. 122 at 40-60.  However, Felix did not make a similar objection to the officers' statements about what Healy told them regarding the gun's location.  Felix made a single objection to Sergeant Kennedy's testimony when Kennedy stated he went to the location where the gun was found in furtherance of the investigation that began at the scene of the shooting. *Id.* at 65.  Felix's counsel stated "objection" without indicating any grounds for the objection.  The record does not reflect any elaboration on the basis for the objection or a ruling on the objection.  Felix did not request that any testimony be stricken.

Felix's oral and written Rule 29 motions for acquittal were based on the argument that the Government had failed to elicit sufficient testimony that the gun charged in the indictment was the same gun that was used to shoot Felix, even assuming the Government had proved Felix shot himself. ECF Nos. 170 at 251-78; 115; 117.  At that point, the evidence was closed and Healy did not testify.  But neither the oral nor written motion raised a Confrontation Clause argument based on Healy's statements to the officers linking the gun from the shooting location to the address where it was found.

Because the substance of the officers' testimony and Healy's refusal to testify were facts known to Felix by the close of evidence, this argument is not based on "new" evidence.  It therefore cannot form the basis of a motion for a new trial filed more than 14 days after the verdict. *See* Fed. R. Crim. P. 33.

/ / / /

1  **II. *BRADY/GIGLIO***

2      "There are three elements of a *Brady/Giglio* violation: (1) the evidence at issue must be

3  favorable to the accused, either because it is exculpatory, or because it is impeaching; (2) that

4  evidence must have been suppressed by the State, either willfully or inadvertently; and (3)

5  prejudice must have ensued." *United States v. Kohring*, 637 F.3d 895, 901-02 (9th Cir. 2011)

6  (quotation omitted).  Prejudice means "there is a reasonable probability that, had the evidence

7  been disclosed to the defense, the result of the proceeding would have been different." *United*

8  *States v. Bagley*, 473 U.S. 667, 682 (1985).  "A reasonable probability does not mean that the

9  defendant 'would more likely than not have received a different verdict with the evidence,' only

10 that the likelihood of a different result is great enough to 'undermine[ ] confidence in the outcome

11 of the trial.'" *Smith v. Cain*, 132 S. Ct. 627, 630 (2012) (quoting *Kyles v. Whitley*, 514 U.S. 419,

12 434 (1995)).  To make this determination, the suppressed evidence is considered collectively in

13 light of the other evidence in the case. *Kyles*, 514 U.S. at 436-37.

14      The defendant does not have to show that he likely would have been acquitted. *Id.* at 434

15 (stating that "a showing of materiality does not require demonstration by a preponderance that

16 disclosure of the suppressed evidence would have resulted ultimately in the defendant's

17 acquittal").  The defendant also is not required to show the evidence would be insufficient to

18 convict him. *Id.* at 434-35.  "Rather, the question is whether the favorable evidence could

19 reasonably be taken to put the whole case in such a different light as to undermine confidence in

20 the verdict." *Strickler v. Greene*, 527 U.S. 263, 290 (1999) (quotation omitted).  Finally, it is

21 immaterial if the prosecutor acted in good faith or bad faith, and the prosecutor is charged with "a

22 duty to learn of any favorable evidence known to the others acting on the government's behalf in

23 the case, including the police." *Kyles*, 514 U.S. at 437-38.

24      There is not a reasonable probability of a different result if the Government had disclosed

25 the meeting between the Assistant United States Attorney and Healy.  Regardless of whether

26 Healy testified, the 911 call and Onofrietti's testimony identifying Healy as the 911 caller still

27 would have been admitted.  Even if the meeting had been disclosed, Healy could have refused to

28

testify just as she did at trial.  In that event, the jury would never have learned about the meeting and thus the failure to disclose it would have had no impact on the proceedings.  Alternatively, Healy could have testified consistently with the 911 call and her prior statements identifying Felix as the shooter, in which case the information about the meeting would have served only as impeachment.  It is unlikely that impeachment could overcome the combination of the 911 call, her prior statements consistent with the 911 call, and her live testimony that Felix shot himself.

Finally, it is possible that Healy could have testified that she or Tank shot Felix and that she only said Felix shot himself to protect herself (either from criminal liability or from Tank's threats) and that she repeated that story in light of the Government's threats.  In that scenario, she still would have been thoroughly impeached based on the 911 call where she stated Felix shot himself and her prior statements consistent with the 911 call.  Additionally, the Government would have elicited that Healy was Felix's girlfriend at the time of trial and thus she had incentive to lie for him.  Consequently, the testimony that she met with an Assistant United States Attorney prior to her testimony and potentially was threatened or induced to testify a certain way does not put the whole case in such a different light as to undermine confidence in the verdict.  Indeed, it is difficult to understand why the defense was so determined to preclude Healy from testifying (as discussed below) if her testimony would have had such a favorable impact on the trial for the defense.  While it is possible a reasonable jury could have believed one of Healy's other stories, it is insufficient for Felix to show a reasonable possibility of a different result.  Rather, Felix must show a reasonable probability.  *Strickler*, 527 U.S. at 291.  He has not done so.

To the extent one could speculate that the jury may have been provoked into jury nullification if it heard about the meeting between Healy and the Assistant United States Attorney, a defendant cannot argue jury nullification. *See United States v. Griggs*, 50 F.3d 17 (9th Cir. 1995) (unpublished) (stating a defendant "has no right to seek jury nullification, [so] he has no right to present evidence relevant only to such a defense"); *United States v. Powell*, 955 F.2d 1206, 1213 (9th Cir. 1992) (defendant not entitled to jury instruction on nullification). Consequently, a new trial is not warranted on the basis that perhaps the jury would nullify based

1   on the Government allegedly strong-arming a witness.  I therefore deny the motion for a new trial

2   based on a *Brady*/*Giglio* violation.

3   **III.  FRAUD ON THE COURT**

4           Courts have inherent equitable power to vacate a judgment obtained by fraud. *Chambers*

5   *v. NASCO, Inc.*, 501 U.S. 32, 44 (1991).  This power should be exercised "with restraint and

6   discretion." *Id.*  To show fraud on the court, the party alleging fraud "must demonstrate, by clear

7   and convincing evidence, an effort by the government to prevent the judicial process from

8   functioning in the usual manner." *United States v. Estate of Stonehill*, 660 F.3d 415, 445 (9th Cir.

9   2011) (quotation omitted).  That party "must show more than perjury or nondisclosure of

10  evidence, unless that perjury or nondisclosure was so fundamental that it undermined the

11  workings of the adversary process itself." *Id.*  "Most fraud on the court cases involve a scheme by

12  one party to hide a key fact from the court and the opposing party." *Id.*  The focus is not on

13  prejudice to the party claiming fraud on the court but on whether the other party "harm[ed] the

14  integrity of the judicial process." *Id.* (quotation omitted).

15          The record does not support Felix's contention that the Government induced Healy to

16  testify just enough for the jury to hear her voice but then to invoke her Fifth Amendment rights.

17  Rather, it was Felix who did not want Healy to testify and the Government who sought to compel

18  her testimony.  First, Felix sought to exclude Healy's testimony prior to her testifying. ECF Nos.

19  94; 155 at 15.  Second, when Healy took the stand and expressed reluctance to testify, the

20  Government granted use immunity to secure her testimony. ECF No. 120 at 195-96.  Third, the

21  Government argued against allowing Healy to testify for the sole purpose of invoking the Fifth

22  Amendment in front of the jury.  Rather, the Government requested Healy be canvassed outside

23  the jury's presence. *Id.* at 198, 207, 211-217.  It was the defense who argued that the questioning

24  of Healy should proceed in front of the jury. *Id.* at 214.

25          Finally, the Government strongly and repeatedly advocated that Healy must testify in light

26  of the immunity grant and that she no longer had a Fifth Amendment right to assert. *Id.* at 198-

27  206, 227-28, 241-42, 245; *see also* ECF No. 121 at 6-8.  It was the defense that argued Healy

28

1  wanted to invoke her rights and not testify further and that the court was applying too much

2  pressure on the witness to compel her testimony. *Id.* at 234-38, 242; *see also* ECF No. 122 at 25-

3  26.  Felix's fraud on the court theory is belied by the record.

4        Additionally, Felix suggested at the hearing on the present motion that the Government

5  offered different types of immunity to Healy and witness Deziray Germany and did not clarify for

6  the record that Germany had only use immunity.  This contention is incorrect.  The Government

7  offered both witnesses use immunity. ECF No. 120 at 105-06, 195-96.  Germany stated she

8  believed she had immunity for anything she might say on the stand as well as anything stated in

9  her prior statements. *Id.* at 106-07.  As discussed on the record, the defense could cross examine

10  Germany about any inducement she had to testify and that would be based on Germany's

11  understanding of the benefit she received. *Id.* at 124-26.  But if "she's wrong, she's wrong" about

12  what her actual immunity was, and she had an attorney to explain to her what her immunity

13  covered. *Id.* at 125-26.  Government counsel specifically clarified that Germany had only use

14  immunity, which would protect her from prosecution based on her testimony given in this case.

15  *Id.* at 124-26.[1]

16        In sum, the record does not support a finding that the Government engaged in an effort to

17  prevent the judicial process from functioning in the usual manner.  The new evidence consists of

18  undisclosed impeachment information regarding a witness whose testimony ultimately was

19  stricken because, despite a grant of immunity, she refused to testify.  This was not so fundamental

20  that it undermined the workings of the adversary process itself for the reasons discussed above

21

22  _____

[1] Government counsel stated:

23        And that's fine, but I want to be clear because [defense counsel] in addition to this,
24        said, over and over again, that she's going to cross that [Germany] can never be
          prosecuted for those crimes, that's incorrect.  I want to just make sure before we
25        start that the impeachment is correct.  She can cross-examine [Germany] about the
          inducement, but the overall saying [Germany] can never be prosecuted because of
26        the immunity is wholly incorrect.  The testimony [Germany] gives today cannot be
          used against her in a future state or federal prosecution of any crime she might
27        have committed.  So I want to make sure we're clear on that as well.

28  ECF No. 120 at 125.

8

regarding Healy's testimony and possible thorough impeachment on a multitude of grounds, and because a nullification argument cannot support Felix's motion for a new trial.  I therefore deny Felix's motion for a new trial based on fraud on the court.

## IV.  PROSECUTORIAL MISCONDUCT

Although not raised in his motion, Felix argues in his reply that he ought to be granted a new trial based on prosecutorial misconduct.  I do not normally consider an issue raised for the first time in a reply brief. *See Vasquez v. Rackauckas*, 734 F.3d 1025, 1054 (9th Cir. 2013).  Nevertheless, I will consider this issue because it is closely aligned with Felix's fraud on the court theory.

The Government "denies the defendant a fair trial only when (1) the witness's testimony would have been relevant, and (2) the prosecution refused to grant the witness use immunity with the deliberate intention of distorting the fact-finding process." *Williams v. Woodford*, 384 F.3d 567, 600 (9th Cir. 2004).  "To demonstrate the prosecutorial misconduct of the second prong, [the defendant] must show that the prosecution intentionally caused a defense witness to invoke the Fifth Amendment right against self-incrimination, or that the prosecution granted immunity to a government witness in order to obtain that witness's testimony, but denied immunity to a defense witness whose testimony would have directly contradicted that of the government witness." *Id.*

"The prosecution's conduct must amount to a substantial interference with the defense witness's free and unhampered determination to testify before the conduct violates the defendant's right to due process." *Id.* at 602.  "Undue prosecutorial interference in a defense witness's decision to testify arises when the prosecution intimidates or harasses the witness to discourage the witness from testifying, for example, by threatening the witness with prosecution for perjury or other offenses." *Id.* at 601-02.  For example, bringing "baseless" perjury charges may suffice to show prosecutorial misconduct. *Id.* at 602.  Additionally, a prosecutor may be found to have intentionally subverted the judicial process by telling a witness that whether he will be prosecuted on other charges would depend on how he testified and advising that witness about the Fifth Amendment privilege in order to induce the witness to assert the privilege. *United States*

9

*v. Lord*, 711 F.2d 887, 891-92 (9th Cir. 1983). However, merely advising a witness that he "'could be' prosecuted for his crimes" is not misconduct, where a prosecutor does not suggest the witness should alter his testimony to avoid prosecution and does not encourage the witness not to testify. *United States v. Barona*, 59 F.3d 176 (9th Cir. 1995) (unpublished).

Additionally, mere warnings about the consequences of perjury do not suffice to show prosecutorial misconduct. *Williams*, 384 F.3d at 603. A prosecutor should not "combin[e] a standard admonition against perjury—that [the witness] could be prosecuted for perjury in the event she lied on the stand—with an unambiguous statement of his belief that [the witness] would be lying if she testified in support of [the defendant's] alibi." *United States v. Vavages*, 151 F.3d 1185, 1190 (9th Cir. 1998) (emphasis omitted). However, that does not mean "that a prosecutor should never articulate his belief that a witness is lying." *Id.* Rather, such conduct is unwarranted "where the prosecutor lacks any substantial basis in the record for believing the witness is lying." *Id.* Further, the force of such admonitions may be lessened if they are communicated to the witness's counsel. *See id.* at 1191 (stating "a defendant may not be prejudiced by a prosecutor's improper warnings where counsel for a witness strips the warnings of their coercive force").

The Government granted Healy use immunity, so there is no argument here that the Government should have given immunity to a defense witness but did not. Additionally, as discussed above, the record belies the suggestion that the Government induced Healy to invoke her Fifth Amendment rights. The Government granted Healy use immunity and repeatedly asserted Healy had no Fifth Amendment rights to assert. The Government was correct in its assertion. A witness may not invoke the Fifth Amendment based on a belief that her "testimony, even if truthful, would subject her to a perjury prosecution":

> A witness may not claim the privilege of the [F]ifth [A]mendment out of fear that he will be prosecuted for perjury for what he is about to say. The shield against self-incrimination in such a situation is to testify truthfully, not to refuse to testify on the basis that the witness may be prosecuted for a lie not yet told.

1   *Id.* at 1192 (quotation omitted).  The record amply demonstrates that the Government was intent

2   on having Healy testify, not in having her invoke her (non-existent) Fifth Amendment right and

3   refuse to testify.

4          Additionally, the Government had a valid basis for believing Healy would lie on the stand

5   and thus it was not misconduct to give Healy admonitions about committing perjury.  Healy had

6   made three different statements about who shot Felix.  The Government knew she was Felix's

7   girlfriend at the time of trial and thus had incentive to lie for him.  The Government also had a

8   reasonable basis to believe that Healy's statements that she or Tank shot Felix were lies because

9   those statements contradicted her own prior statements (on her panicked 911 call and in her initial

10  interviews) that Felix shot himself. *See id.* at 1190 (stating that "unusually strong admonitions

11  against perjury are typically justified only where the prosecutor has a more substantial basis in the

12  record for believing the witness might lie—for instance, a direct conflict between the witness'

13  proposed testimony and her own prior testimony").

14         Finally, Healy had counsel to advise her regarding her rights.  Significantly, neither Healy

15  nor her counsel in this case or in her own criminal case ever stated that the reason she refused to

16  testify was that she was threatened with prosecution if she did not testify in the manner the

17  Government wanted. *See* ECF Nos. 156-2; 171-2 at 112-20.  I therefore deny Felix's motion for a

18  new trial based on prosecutorial misconduct.

19  **V.  CONCLUSION**

20         In sum, no evidentiary hearing is necessary because any contention that the Government

21  wanted anything other than for Healy to testify is manifestly belied by the record.  The

22  Government acted to secure Healy immunity when she expressed a reluctance to testify, and the

23  Government strongly advocated for compelling Healy's testimony when she nevertheless

24  attempted to improperly invoke the Fifth Amendment and refused to testify.  The new evidence

25  consists of undisclosed impeachment information regarding a witness whose testimony ultimately

26  was stricken because, despite a grant of immunity, she refused to testify.  This does not support a

27  new trial on any of the grounds Felix raises.

28

1    IT IS THEREFORE ORDERED that defendant Joseph Felix's motion for a new trial

2  **(ECF No. 156) is DENIED**.

3    Dated: September 9, 2016.

_____

ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE